UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **CHARLES C. GODEAUX** | **CIVIL ACTION NO. 18-0929** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **MIKE TUBBS, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Plaintiff Charles C. Godeaux, a detainee at Morehouse Parish Jail proceeding pro se and in forma pauperis, filed the instant Complaint on July 16, 2018, under 42 U.S.C. § 1983. He names Sheriff Mike Tubbs, Warden Carl Patrick, Lt. Richard Smith, Lt. Chuck Lord, Cpl. White, Nurse Goodson, Nurse Pennington, Officer Butch Aulds, Deputy Higginbottom, and Mail Officer Patricia Cisk as Defendants.[1]

For the following reasons, it is recommended that, with the exception of Plaintiff's claim against Warden Carl Patrick and Sheriff Mike Tubbs concerning the deprivation of incoming mail, as well as his claim against Defendants Goodson, Pennington, Patrick, and Tubbs concerning his lack of glasses, Plaintiff's claims be dismissed.

## Background

Plaintiff claims that "waste gets on outgoing mail" because detainees are forced to place mail in a cracker box next to mops and brooms. He claims that other detainees have access to the cracker box and can potentially view sensitive documents. He also claims that mail is "often picked up by inmate workers and logged in by inmate workers," that he has not received two

---

[1] This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

pieces of mail that he knows were mailed to him, and that other detainees' legal mail is often open when they receive it. [doc. #s 8, pp. 7-9; 10, p. 15].

Plaintiff next alleges that food at the facility is placed on trays covered in black mold. He also complains that food is "unsanitary," served cold, and served by inmates who do not wash their hands or wear protective paraphernalia. [doc. #s 1, p. 3; 8, pp. 4-5]. Moreover, the bathroom walls, ceilings, and floors "have black mold[,]" and the toilets, urinals, and a ceiling in a bathroom all leak. *Id.* The black mold is detrimental to Plaintiff's sinuses.

Plaintiff alleges further that he has no access to a law library, he is not allowed to purchase legal books, and, although he was given a "tablet device . . . with a law application on it[,]" he did not know how to use it. *Id.*

Plaintiff filed an Amended Complaint on August 15, 2018, raising new claims. [doc. # 8, p. 3]. On January 22, 2018, he asked Nurse Pennington for "eye care" and Pennington responded, "As long as you are housed in this jail, you will never see an eye doctor." [doc. # 10, p. 3]. On March 7, 2018, he requested glasses, complaining of constant, severe headaches, blurred vision, and an inability to read or write. [doc. # 8, p. 3]. Nurse Goodson responded that she was not required to take him to an eye doctor, that Morehouse Parish Sheriff's Office ("MPSO") does not contract with an eye doctor, and that MPSO does not provide glasses to inmates. [doc. #s 8, p. 3; 10, p. 3]. He adds that he was charged for the visit even though he received "no relief." *Id.* at 3-4.

Next, Plaintiff alleges that Nurse Pennington allows correctional officers to open his medication packages without gloves. *Id.* at 3. Also, Deputy Higginbottom dropped Plaintiff's blood pressure medicine in dust, dirt, and lint. [doc. # 10, p. 5]. He alleges, relatedly, that, on

2

October 15, 2017, and October 22, 2017, Officer Aulds told him that he did not have any sinus medication to dispense to Plaintiff. *Id.*

Plaintiff amended once more on September 11, 2018, raising yet another new claim. [doc. # 10, p. 6]. For the first time, Plaintiff claims that he has a "chronic heart condition with a pacemaker" and that Nurse Pennington, Nurse Goodson, Deputy Higginbottom, Officer Aulds, Warden Patrick, and Sheriff Tubbs refused to arrange or approve an appointment with a physician at University Health and Hospitals. *Id.* at 6-7. Plaintiff claims that Dr. Burkett implanted the pacemaker in November of 2016 and instructed Plaintiff to "be seen every 3 months until further notice." *Id.* Plaintiff informed "medical" about his condition, but he "was denied the right to be seen by his heart doctor for well over 8 to 9 months." *Id.*

Plaintiff asks the Court to order medical attention for his exposure to mold, correct the mail system and the "way food is transported and kept," order the facility to maintain a law library and allow detainees to purchase legal books from publishers, and award $10,000.00 on each claim for his pain, suffering, and emotional distress.

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] See *Martin v. Scott,* 156 F.3d 578, 579-

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

80 (5th Cir.1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Likewise, a complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662; *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the

4

complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

**2. Mail**

Plaintiff first claims that "waste gets on outgoing mail" because detainees are forced to place mail in a cracker box next to mops and brooms. [doc. # 8, p. 8]. He adds, in his most recent pleading, that mail is at risk of "being destroyed by random fire" because the box is made of cardboard. [doc. # 10, p. 15]. Plaintiff does not, however, allege that the box, or its location, affected any of his mail.

Relatedly, Plaintiff claims that other detainees have access to the cracker box and can potentially view sensitive documents, that mail is "often picked up by inmate workers and logged in by inmate workers," that legal mail is "held an excessive amount of time," that legal mail is not "logged in," and that other detainees' legal mail is often open when they receive it. [doc. #s 8, p. 8; 10, p. 15]. Again, however, Plaintiff does not allege that these practices or conditions caused him harm or injury.

Because Plaintiff only alleges conjectural risks, he lacks standing to pursue these claims. See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (recognizing that, to have standing, a plaintiff must have suffered an injury in fact that is "actual or imminent, not conjectural or

hypothetical[.]") (citations and internal quotation marks omitted).[3]  Accordingly, these claims should be dismissed without prejudice.[4]

Finally, Plaintiff claims that he did not receive a letter from Philadelphia Church of God or a letter from his stepson. [doc. #s 8, p. 7; 10, p. 16]. He suggests that inmate workers or trustees either lost, destroyed, or distributed the letters to others. He primarily faults Mail Officer Patricia Cisk; however, he does not state why Cisk is responsible. [doc. # 8, p. 7]. Because he does not explain how Officer Cisk violated his constitutional rights, his claim against her should be dismissed.[5]

**3. Conditions of Confinement**

Plaintiff alleges that food at the facility is placed on trays covered in black mold. He also complains that food is "unsanitary," food is served cold, and inmates serve food without washing their hands or wearing gloves, face masks, or hair nets. [doc. #s 1, p. 3; 8, pp. 4-5]. Moreover, the bathroom walls, ceilings, and floors "have black mold[,]" and the toilets, urinals, and a

---

[3] See also *Thompson v. Scott*, 86 F. App'x 17, 18 (5th Cir. 2004) (holding that, because an inmate alleged no injury from a policy, he had no standing to raise a claim); *Colgrove v. Collins*, 62 F.3d 391 (5th Cir. 1995) (holding that a "speculative claim of injury is insufficient to satisfy Article III's requirements for standing."); see, e.g., *Sandoval v. Fox*, 135 F. App'x 691, 691-92 (5th Cir. 2005) (holding that the failure of state prison supervisory personnel to properly train and supervise their subordinates in mail distribution policies did not violate an inmate's constitutional rights, absent a showing that the inmate suffered any actual harm); *Singleton v. Fisher*, 2018 WL 1832875, at *4 (N.D. Miss. Apr. 17, 2018).

[4] See *Colgrove*, 62 F.3d at 391 (observing that, because the absence of standing constitutes the absence of subject matter jurisdiction, dismissal for lack of standing should be without prejudice).

[5] The Court should nevertheless retain the related claim against Warden Carl Patrick and Sheriff Mike Tubbs concerning the deprivation of incoming mail due to the custom or practice of using inmate workers or trustees to deliver mail. [See doc. # 10, pp. 16-17].

ceiling in a bathroom all leak. *Id.*

The Due Process Clause of the Fourteenth Amendment prohibits the punitive confinement of a pretrial detainee because, by definition, the guilt of a detainee has not been adjudicated. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Courts must "determin[e] whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word[]" or whether the conditions are "but an incident of some other legitimate governmental purpose." *Bell*, 441 U.S. at 538. To determine whether the condition is a punishment, and therefore unconstitutional, courts must ascertain whether the "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective." *Id.* at 539. "[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Id.*

"'There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.'" *Bell*, 441 U.S. at 539 (quoting *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). "[T]he fact that [] detention interferes with the detainee's understandable desire to live as comfortably as possible . . . does not convert the conditions or restrictions of detention into 'punishment.'" *Id.* at 537. "Courts must be mindful that [inquiries into whether conditions are arbitrary, purposeless, or punitive] spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." *Id.* at 539. Courts should, in certain circumstances, "defer to the informed discretion of prison administrators because the realities of running a corrections institution are complex and

7

difficult, courts are ill equipped to deal with these problems, and the management of these facilities is confided to the Executive and Legislative Branches, not to the Judicial Branch." *Id.* at n.2.

Here, the conditions alleged are, while unpleasant, de minimis and do not amount to constitutional violations. See *Mahmoud v. Bowie*, 234 F.3d 29 (5th Cir. 2000) (finding the following conclusional and de minimis: allegations of an unsanitary shower and toilet area, a lack of hygiene items, and unappetizing food); *Williams v. Gusman*, 2015 WL 5970424, at *3 (E.D. La. Oct. 14, 2015) ("[T]he mere fact that mold, mildew, and rust are present does not warrant relief."); *Carr v. Newcomer*, 2010 WL 331689, at *9 (W.D. La. Jan. 19, 2010) (finding the following de minimis: the presence of black mold in living areas, eating areas, and shower areas, the proximity of food trays to latrines, that food is served by inmates lacking hair nets and gloves, and that food is served cold); *Cooper v. Med. Staff Nurses*, 2018 WL 4214163, at *6 (W.D. La. Aug. 24, 2018), report and recommendation adopted, 2018 WL 4210809 (W.D. La. Sept. 4, 2018) ("[C]ourts have repeatedly held that the presence of mold and dampness does not render confinement unconstitutional.") (citing cases).[6] Accordingly, Plaintiff's conditions of

---

[6] See also *Lowe v. Richardson*, 2011 WL 1533426, at *1 (5th Cir. Apr. 22, 2011) (holding that an allegation "that the meals were served too cold, not that they were nutritionally insufficient . . . did not state a constitutional claim."); *Delgado v. U.S. Marshals*, 618 F. App'x 236, 237 (5th Cir. 2015) (holding that cold food, poor-quality linens, and limited toilet paper may have been unpleasant, but they were not inhumane conditions); *Billizone v. Jefferson Par. Corr. Ctr.*, 2015 WL 966149, at *8 (E.D. La. Mar. 4, 2015) (dismissing a claim concerning the manner in which food is served because the plaintiff only speculated that the manner could cause harm and, moreover, the "complaints about the condition of the food trays and the food temperature [were], without more, insufficient to state a cognizable claim."); *Wilkerson v. Champagne*, 2003 WL 22872106, at *2 (E.D. La. Nov. 28, 2003) (no constitutional claim when meals served from "old, cracked, dirty food trays" were not always hot); *Sardon v. Peters*, 1995 WL 609147, at *8 (N.D. Ill. Oct. 13, 1995) (allegation that cold food was served failed to state a constitutional claim; *Jackson v. Griffith*, 1995 WL 21939, at *4-5 (E.D. Tex. Jan. 10, 1995) (dismissing a

confinement claims should be dismissed.

**4. Access to Court**

Plaintiff alleges that he has no access to a law library, he is not allowed to purchase legal books, and, although he was given a "tablet device . . . with a law application on it[,]" he did not know how to use it. [doc. #s 8, p. 5; 10, p. 18].

To succeed on a claimed denial of access to court, a plaintiff must show that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (holding that to state a sufficient claim of denial of access to the courts, a plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access). The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353. A plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate 'basic constitutional rights'" in a civil rights action under 42 U.S.C. § 1983. *Id.* at 353-54 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)); see *Lewis*, 518 U.S. at 355 (holding that impairment of any litigating capacity other than attacking sentences and challenging conditions of confinement "is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.").

Here, Plaintiff does not allege that he lost an actionable claim or that a Defendant prevented him from presenting a claim to any court. Rather, Plaintiff only alleges that the lack of

---

claim regarding unsanitary food trays resulting from overcrowded conditions), adopted, 1995 WL 313655 (E.D. Tex. Feb. 8, 1995).

legal materials inhibited his ability to present his claims in an "artful way [that the] court would understand." [doc. # 10, p. 19]. This claim should be denied.[7]

**5. Medical Care**

Plaintiff raises a host of claims concerning inadequate medical care. A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should

---

[7] See *Douthit v. Dean*, 568 F. App'x 336, 337 (5th Cir. 2014) (observing that there is no constitutional right to conduct generalized research and finding no injury because, despite the removal of legal materials, the plaintiff was able to use "a form complaint for claims under § 1983 that elicited relevant facts[]" and "[w]hen the district court identified deficiencies in his claims, it allowed him to submit a more definite statement by answering detailed questions provided by the court."); see also *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (finding that there is no "abstract, freestanding right to a law library or legal assistance, [and that] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."); *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993) (recognizing that the Supreme Court has not extended the right of access to courts "to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court.").

have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff first claims that he was charged for a nurse visit even though he received "no relief." [doc. # 8, p. 3]. "There is . . . no general constitutional right to free health care[,]" and "[c]harging inmates for medical care, furthermore, is not per se unconstitutional." *Breakiron v. Neal*, 166 F. Supp. 2d 1110, 1115 (N.D. Tex. 2001) (cited with approval by *Morris v. Livingston*, 739 F.3d 740, 749 (5th Cir. 2014) (reasoning that the plaintiff did not plead "facts to show that the health care services fee" he paid acted "as a functional denial of medical care . . . .")). "Inmates are not entitled to free medical care, and an inmate's displeasure at having to pay such co-payment does not present a constitutional claim." *Farrakhan v. Johnson*, 2009 WL 1360864, at *5 (E.D. Va. May 13, 2009) (unpublished) (cited with approval by *Morris*, 739 F.3d at 748). In this proceeding, Plaintiff does not claim that he was refused care because he could not pay; rather, he simply claims that he was charged. This claim should be denied.

11

Next, Plaintiff alleges that Nurse Pennington allows correctional officers to open his medication packages without gloves. [doc. # 8, p. 3]. Also, Deputy Higginbottom dropped his blood pressure medicine in dust, dirt, and lint. [doc. # 10, p. 5]. These claims should be denied because the allegations do not demonstrate that Plaintiff was exposed to a substantial risk of serious harm.[8]

Plaintiff alleges, relatedly, that, on October 15, 2017, and October 22, 2017, Officer Aulds told him that he did not have any sinus medication to dispense. *Id.* At worst, this action approximates negligence, but "mere negligence will not suffice to support a claim of deliberate indifference." *Mathis* 49 F.3d at 728; see *Lee v. Richland Par. Det. Ctr.*, 483 F. App'x 904 (5th Cir. 2012) (finding that medical staff and officials at a detention center were not deliberately indifferent to a detainee's medical needs even if there were a few instances of delay or error in administering medicine); *Callicutt v. Panola Cty. Jail*, 200 F.3d 816 (5th Cir. 1999) ("Although the jail did not provide [the prisoner] his medication upon each request, these negligent acts do not form a basis for finding deliberate indifference as a matter of law.").[9] This claim should be

---

[8] See *Freeze v. Griffith*, 849 F.2d 172 (5th Cir. 1988) (finding that an inmate had no claim against prison officials for allegedly being given medicine that had been dropped on the floor because the inmate never suffered any ill effects from ingesting the medicine); see generally *Woody v. Comprehensive Nursing, Inc.*, 2009 WL 196216, at *3 (N.D. Ga. Jan. 27, 2009) (finding, where the plaintiff alleged that a nurse "refused to dispense his blood pressure medication either by placing it in a fresh disposable cup while wearing latex gloves or by placing the medication in his hands directly from the medication's bubble pack," that the allegations did not "suggest a substantial risk of serious harm."); *Todd v. Walters*, 166 F. App'x 590, 593 (3d Cir. 2006); *Acree v. Peterson*, 2000 WL 1141587, at *8 (D. Or. Aug. 1, 2000).

[9] See also *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992) (opining, "occasionally, a dose of medication may have been forgotten, but these deficiencies were minimal, they do not show an unreasonable standard of care, and they fall far short of establishing deliberate indifference by the prison authorities.").

denied.

Finally, Plaintiff claims that he has a "chronic heart condition with a pacemaker" and that Nurse Pennington, Nurse Goodson, Deputy Higginbottom, Officer Aulds, Warden Patrick, and Sheriff Tubbs refused to arrange or approve an appointment with a physician at University Health and Hospitals. [doc. # 10, p. 6-7]. Plaintiff claims that Dr. Burkett installed the pacemaker and instructed him to "be seen every 3 months until further notice." *Id.* Plaintiff informed "medical" about his condition, but he "was denied the right to be seen by his heart doctor for well over 8 to 9 months." *Id.* He "went about a 9-month span without seeing his required heart doctor . . . ." *Id.*

While Plaintiff complains of generalized pain, suffering, and fear, he does not allege that he suffered *substantial* harm. *Galvan v. Calhoun Cty.*, 719 F. App'x 372, 374 (5th Cir. 2018) (recognizing that, to establish liability based on a delay in treatment, a plaintiff must show deliberate indifference to serious medical needs that resulted in substantial harm); c.f. *Galvan v. Calhoun Cty.*, 719 F. App'x 372 (5th Cir. 2018) (holding that an inmate stated a claim where he alleged that his repeated requests to be taken to the hospital for *severe, life-threatening* pain went unanswered by prison officials for several days). Accordingly, this claim should be denied.[10]

### 6. Preliminary Injunction

Plaintiff seeks to preliminarily enjoin Defendants from "any enforcement which clearly violates [his] Due Process and constitutional rights." [doc. # 3]. He writes:

[T]he plaintiff will be subjected to further:

---

[10] The Court should retain Plaintiff's remaining claim against Defendants Goodson, Pennington, Patrick, and Tubbs concerning his lack of glasses.

>(A) unlawful restriction afforded other [sic];
>
>(B) At the discretion of the defendants; the right to seek redress with the Court. As losing destroying mail not logging outgoing mail [sic];
>
>(C) Will also suffer further 8th Amendment right violations to be free from excessive and abusive police force mentally and physically [sic].

*Id.*

To obtain a preliminary injunction, a movant must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (citation omitted). A preliminary injunction is an extraordinary remedy that "should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Planned Parenthood Ass'n of Hidalgo Cnty. Texas, Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012) (citation omitted).

Here, Plaintiff has not met this exacting burden of persuasion. Specifically, he fails to establish that there is a substantial likelihood that he will suffer irreparable injury if the Court does not issue the injunction. Moreover, even though the undersigned recommends retaining some of Plaintiff's claims, Plaintiff has not established a substantial likelihood of success on the merits. Defendants have yet to answer, and discovery has not occurred. Should Plaintiff prove a constitutional violation, he may be entitled to permanent injunctive relief. Accordingly, Plaintiff's Motion for Preliminary Injunction should be denied.

**7. Appointed Counsel**

Plaintiff moves for appointed counsel, claiming that he "has no law books . . . ." [doc. # 6]. Congress has not specifically authorized courts to appoint counsel for plaintiffs proceeding under Section 1983. "Generally speaking, no right to counsel exists in § 1983 actions . . . [but] appointment of counsel should be made as authorized by 28 U.S.C. § 1915(d) where exceptional circumstances are present." *Robbins v. Maggio*, 750 F.2d. 405 (5th Cir. 1985) (internal quotation marks and quoted source omitted). Under 28 U.S.C. § 1915(e)(1), federal courts may only *request* that an attorney represent an indigent plaintiff. See *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 301-02 (1989).

Although courts can ask an attorney to represent an indigent plaintiff, they are not required to in the absence of "exceptional circumstances." See *Ulmer v. Chancellor*, 691 F.2d. 209, 212 (5th Cir. 1982); *Jackson v. Cain*, 864 F.2d. 1235, 1242 (5th Cir. 1989). To determine whether exceptional circumstance exist, courts consider:

    1. the type and complexity of the case;

    2. the [plaintiff's] ability adequately to present and investigate his case;

    3. the presence of evidence which largely consists of conflicting testimony so as to require skill in presentation of evidence and in cross-examination; and

    4. the likelihood that appointment will benefit the [plaintiff], the court, and the defendants by shortening the trial and assisting in just determination.

*Parker v. Carpenter*, 978 F.2d. 190 (5th Cir. 1992) (quotation marks and quoted source omitted); see *Ulmer*, 691 F.2d. at 213; *Jackson*, 864 F.2d. at 1242. Courts also consider whether a plaintiff has demonstrated the inability to secure private counsel on his own. See *Jackson*, 864 F.2d. at 1242; *Ulmer*, 691 F.2d. at 213.

Here, with respect to the first factor above, Plaintiff's allegations, while serious, are not complex. Second, Plaintiff's pleadings demonstrate that he is reasonably articulate and intelligent. Plaintiff has managed to file several pleadings; he need not be versed in the law as long as he can recite the facts and his demands with sufficient clarity.

Examining the third factor is premature because the case is not set for trial. Turning to the fourth factor, there is no indication that appointed counsel would aid in the efficient and equitable disposition of the case. Finally, Plaintiff is not excused from trying to procure counsel for himself. He has not demonstrated that he is unable to secure representation from an attorney or pro bono organization. Accordingly, as Plaintiff does not present exception circumstances, his motion should be denied.

## Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that, with the exception of his claim against Warden Carl Patrick and Sheriff Mike Tubbs concerning the deprivation of incoming mail, as well as his claim against Defendants Goodson, Pennington, Patrick, and Tubbs concerning his lack of glasses, Plaintiff Charles C. Godeaux's claims be **DISMISSED**. The claims that Plaintiff lacks standing to pursue should be dismissed **WITHOUT PREJUDICE**. The remaining claims subject to dismissal should be dismissed **WITH PREJUDICE** as frivolous and for failing to state claims on which relief can be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction, [doc. # 3], and Motion for Appointment of Counsel, [doc. # 6], be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation

to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 23rd day of October, 2018.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE